IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| RICHARD THOMPSON, Trustee ) | | |
| of The Thompson Family Trust ) | | |
| ) | | |
| Plaintiff, ) | | |
| ) | | |
| vs. ) | No. | 08 CV 3240 |
| ) | | |
| RONALD M. FAJERSTEIN, ) | Judge Kocoras | |
| FAJERSTEIN DIAMOND IMPORTERS ) | | |
| & CUTTERS, INC., and ANTWERP ) | Magistrate Judge Mason | |
| DIAMOND IMPORTERS & ) | | |
| CUTTERS, INC., ) | | |
| ) | | |
| Defendants. ) | | |

**DEFENDANTS' RULE 12 MOTION TO DISMISS**

Defendants, RONALD M. FAJERSTEIN, FAJERSTEIN DIAMOND IMPORTERS & CUTTERS, INC. and ANTWERP DIAMOND IMPORTERS & CUTTERS, INC., by and through their attorney, PHILIP J. NATHANSON of THE NATHANSON LAW FIRM, moves to dismiss this case, pursuant to rule 12 of the Federal Rules of Civil Procedure, F.R.Civ.P. 12. In support of their motion, defendants state as follows:

**I. Rule 12(b)(1) Motion To Dismiss For Lack Of Subject Matter Jurisdiction; and Rule 12(b)(7) Motion to Dismiss for Failure to Join a Party Under Rule 19.**

Plaintiff's complaint pleads that plaintiff is "a trustee" of the plaintiff family trust (Compl. ¶7). The Supreme Court has held that trustees of an express trust, who hold title and manage property for the benefit of beneficiaries, may bring diversity actions in their own names, with the trustees' citizenship, rather than the beneficiaries' citizenship, used for diversity purposes. *Navarro Savings Ass'n v. Lee*, 446 U.S. 458, 465-

66, 100 S. Ct. 1779 (1980);  *accord*, *Chappedelaine* v. *Dechenaux*, 4 Cranch 306, 308 (1808); *Monahan v. Holmes*, 154 F. Supp. 2d 363 (D. Conn. 2001)("The citizenship of trustees determines diversity jurisdiction over a trust, where the trustees are the real parties in interest in the controversy.")   However, the citizenship of each trustee, and co-trustee, must be considered for purposes of diversity jurisdiction.

The Complaint only identifies Richard Thompson as "a trustee" of the Thompson Family Trust (Compl. ¶7).  It does not specify whether any co-trustees exist.  But any co-trustee, if one exists, had to have acted with, and consented to, the dealings of plaintiff Richard Thompson with third parties, *Dunker v. Reichman*, 841 F.2d 177, 180 (7th Cir. 1988)("Illinois law provides that as a general rule, co-trustees form one collective trustee and hence must perform their duties in their joint capacity. ...  As such, a single trustee, without the consent of the remaining trustees, lacks the authority to enter into binding agreements with third parties merely because a trust agreement may have given such authority to co-trustees.").

Any such co-trustee, therefore, if one exists, would be an indispensable party. *Godfrey and Williams v. Kamin*, 1999 U.S. Dist. LEXIS 14749 (N.D. Ill. 1999)(Rule 12(b)(7) joinder order); *Gross v. Gross*, 1996 U.S. Dist. LEXIS 18886 (E.D. Pa. 1996)( Joinder of co-trustees, who were indispensable parties under Fed. R. Civ. P. 19, would have destroyed diversity jurisdiction, so case dismissed); *Hinsdale v. Farmers National Bank*, 93 F.R.D. 662 (N.D. Ohio 1982)(Joinder of co-trustee, who was a necessary party, would destroy diversity).  Given the sparse allegations on the nature of the trust and the property to which the trustee holds legal title and manages, as well as the non-existent

allegations of citizenship, it remains unclear whether there is any co-trustee of the plaintiff trust, and, if so, whether that co-trustee is in complete diversity with the defendants. Mr. Thompson alleges that "his principal residence" is in Atherton, California, yet his Complaint attaches, as Exhibit A, a check drawn on an Illinois bank, Northern Trust. Does that mean that Mr. Thompson maintains an account in Illinois and does not live in Illinois, or that Northern Trust is a co-Trustee of the trust? See, *Northern Trust v. Bunge*, 899 F.2d 591 (7th Cir. 1990)("… trustees of express trusts who have legal title to trust property and who sue in their own names can establish diversity based on their own citizenship rather than that of the trust's beneficiaries." But Northern Trust did not have title to trust property in *Bunge* case, so individual citizenship considered). The Complaint omits any citizenship or title allegations, as to the Trust and its trustees, that would enable this Court to determine the existence of diversity jurisdiction.

As this Court has previously written, federal courts are under an independent obligation to examine their own subject matter jurisdiction. *Chavin v. Cole Taylor Bank*, Fed. Sec. L. Rep. (CCH) P94,155, 2007 U.S. Dist. LEXIS 10483 (N.D. Ill. 2007) (Judge Kocoras); *See Kochert v. Greater Lafayette Health Services, Inc.*, 463 F.3d 710, 714 (7th Cir. 2006). Plaintiff's Complaint does not contain sufficient allegations to establish whether or not this Court has diversity jurisdiction. Nor does the Complaint contain sufficient allegations for this Court to determine whether or not there are indispensable, required or necessary parties, such as co-trustees. The Complaint should therefore be dismissed.

**II.  Rule 12(B)(3) Motion To Dismiss Pursuant to the Forum Selection Clause**

"A lack of venue challenge, based upon a forum selection clause, is appropriately brought as a Rule 12(b)(3) motion to dismiss." *Continental Insurance Co. v. M/V Orsula*, 354 F. 3d 603 (7th Cir. 2003).  Plaintiffs attach to this Motion the affidavit of defendant Ronald M. Fajerstein, which affidavit has attached to it the February 5, 2008 written agreement sent to plaintiff Thompson on February 6, 2008.  That agreement has a forum selection clause that states that:

> "… Recipient further consents to the jurisdiction of the Circuit Court of Cook County, Illinois, and agrees that any rights and responsibilities set forth in this document shall be adjudicated in the Circuit Court of Cook County, Illinois.  Recipient waives the right to a trial by jury."

That forum selection clause is valid, and defendants ask this Court to enforce it. *Northwestern Nat'l Ins. Co. v. Donovan*, 916 F.2d 372 (7th Cir. 1990); *Abbott Labs. v. Takeda Pharm. Co.*, 476 F.3d 421 (7th Cir. 2007); *IFC Credit Corp. v. Aliano Bros. Gen. Contrs., Inc.*, 437 F.3d 606, 611-612 (7th Cir. 2006).  Under Illinois state law, a choice of forum or forum selection clause should be enforced unless the opposing party shows that enforcement would be unreasonable under the circumstances. *Aon Corp., et.al v. Utley*, 371 Ill. App. 3d 562, 568 (1st Dist. 2006) (appellate court reversed dismissal of lower court and held Illinois Court had personal jurisdiction over a California resident due to a forum selection clause stated, "any and every legal proceedings arising out of or in connection with this Agreement shall be brought in the Circuit Court of Cook County of the State of Illinois…"); *Compass Environmental;, Inc. v. Polu Kai Services, LLC*, 379 Ill. App. 3d 549, 554-555 (1st Dist. 2008).

### III. Rule 12(B)(6) Motion To Dismiss – First Claim For Relief Illinois Consumer Fraud and Deceptive Business Practices Act.

Plaintiff's count one, pursuant to the Illinois Consumer Fraud and Deceptive Business Practices Act ("Illinois Consumer Fraud Act") must be dismissed because plaintiff lacks standing to pursue such a claim; the count fails to state a claim for fraudulent misrepresentation under the Illinois Consumer Fraud Act and the count fails to state a claim for unfairness under the Illinois Consumer Fraud Act.

**A.  Plaintiff Lacks Standing Under the Illinois Consumer Fraud Act.**

A private cause of action under the Consumer Fraud Act is allowed "if the circumstances that relate to the disputed transaction occur primarily and substantially in Illinois." *Avery v. State Farm Mut. Auto. Ins. Co.*, 216 Ill. 2d 100, 187 (2005), *Phillips v. Bally Total Fitness Holding Corp.,* 372 Ill. App. 3d 53, 58-59 (1st Dist. 2007). "[T]here is no single formula or bright-line test for determining whether a transaction occurs within Illinois. Rather, each case must be decided on its own facts." *Avery*, 216 Ill. 2d at 187, *Phillips,* 372 Ill. App. 3d at 58-59.

The place where a company policy was created may be relevant in establishing the situs of a consumer transaction, but this single factor is not enough to show that the deceptive practice occurred in Illinois. *Avery,* 216 Ill. 2d at 187. It is insufficient that a defendant resides in Illinois or has its corporate headquarters in Illinois. See *Id*. at 189-90. "The fact that a scheme to defraud was disseminated from a company's headquarters in Illinois is insufficient". *Phillips,* 372 Ill. App. 3d at 58. Out-of-state plaintiffs "have no cognizable cause of action under the Consumer Fraud Act" where

"the overwhelming majority of the circumstances" pertaining to their claims took place outside Illinois. *Avery,* 216 Ill. 2d at 188.

Plaintiff's complaint alleges that the overwhelming majority of circumstances relating to the disputed transaction in this case occurred outside of Illinois. First, plaintiff alleges that he maintains his "principal residence" in California (Compl. ¶7). In addition, plaintiff alleges that plaintiff first met with defendant in San Francisco, California to discuss the possibility of purchasing a diamond (Compl. ¶12). Plaintiff alleges that it was during this first meeting that defendant made representations regarding his experience and willingness to look for a special diamond for plaintiff (Compl. ¶12). Plaintiff alleges no instance where he was physically present in Illinois.

**B.  Plaintiff Fails to State a Claim For Fraudulent Misrepresentation Under the Illinois Consumer Fraud Act Because This Is Only a Breach of Contract.**

Section 2 of the Illinois Consumer Fraud Act provides that "deceptive acts or practices …or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact… in the conduct of any trade or commerce are hereby declared unlawful..." 815 ILCS 505/2 (West 1998). Private causes of action for practices proscribed by section 2 are authorized by Section 10a(a) of the Act. Section 10a(a) states, in pertinent part: "Any person who suffers actual damage as a result of a violation of [the] Act committed by any other person may bring an action against such person." 815 ILCS 505/10a(a) (West 1998). To prove a private cause of action under section 10a(a) of the Act, a plaintiff must establish: (1) a deceptive act or practice by the defendant, (2) the

defendant's intent that the plaintiff rely on the deception, (3) the occurrence of the deception in the course of conduct involving trade or commerce, and (4) actual damage to the plaintiff (5) proximately caused by the deception. *Avery v. State Farm Mut. Auto. Ins. Co.*, 216 Ill. 2d 100, 179-180 (2005).

Plaintiff's claims and allegations under the Illinois Consumer Fraud Act merely recite how defendant allegedly failed to perform under the contract. A breach of contractual promise, without more, is not actionable under the Illinois Consumer Fraud Act. The Supreme Court of Illinois in *Avery, citing American Airlines, Inc. v. Wolens*, 513 U.S. 219, 233 (1995), held as follows on this issue:

> "**What plaintiff calls 'consumer fraud' or 'deception' is simply defendants' failure to fulfill their contractual obligations**. **Were our courts to accept plaintiff's assertion that promises that go unfulfilled are actionable under the Consumer Fraud Act, consumer plaintiffs could convert any suit for breach of contract into a consumer fraud action**. However, it is settled that the Consumer Fraud Act was not intended to apply to every contract dispute or to supplement every breach of contract claim with a redundant remedy. (citations omitted). We believe that a 'deceptive act or practice' involves more than the mere fact that a defendant promised something and then failed to do it. That type of 'misrepresentation' occurs every time a defendant breaches a contract."

*Avery*, 216 Ill. 2d at 169 (emphasis added).

Further, plaintiff has not alleged a deceptive act or practice by the defendants sufficient to state a claim under the Act. Allegations that defendant had experience buying diamonds or defendant told plaintiff that the diamond was "one of the most beautiful stones" are mere "puffing" and such phrases are not deceptive under the Illinois Consumer Fraud Act, as *Avery* also held:

7

> ""Puffing" denotes the exaggerations reasonably to be expected of a seller as to the degree of quality of his or her product, the truth or falsity of which cannot be precisely determined.  See, *e.g.*, *Speakers of Sport, Inc. v. Proserv, Inc.*, 178 F.3d 862, 866 (7th Cir. 1999) ("Puffing in the usual sense signifies meaningless superlatives that no reasonable person would take seriously, and so it is not actionable as fraud"). … Describing a product as "quality" or as having "high performance criteria" are the types of subjective characterizations that Illinois courts have repeatedly held to be mere puffing. Thus, as a matter of law, neither phrase can be considered deceptive under the Consumer Fraud Act".  *Avery*, 216 Ill. 2d at 174.

Nor has plaintiff pleaded that defendant intended plaintiff to rely on this alleged deception.  Instead, plaintiff has pleaded that defendant agreed to locate a diamond for plaintiff pursuant to exact specifications, defendant provided plaintiff with a "GIA Certification" and plaintiff rejected the diamond that defendant tendered.

Further, in a cause of action for fraudulent misrepresentation brought under the Illinois Consumer Fraud Act, a plaintiff must prove that he or she was actually deceived by the misrepresentation in order to establish the element of proximate causation. *Avery*, 216 Ill. 2d at 199, *citing*, *Zekman v. Direct American Marketers, Inc.*, 182 Ill. 2d 359 (1998), *Oliveira v. Amoco Oil Co.*, 201 Ill. 2d 134 (2002), *Shannon v. Boise Cascade Corp.*, 208 Ill. 2d 517 (2004) (emphasis added).  Plaintiff has pleaded the opposite.  Plaintiff's complaint alleges that plaintiff had final approval of the diamond; the diamond had to conform to his specifications; and that "Thompson decline[d] to wire additional funds until he could verify that the diamond conformed to his specifications." When plaintiff received the certification he immediately told defendant he would not purchase the diamond (Compl. ¶¶17-20).  Plaintiff was not deceived by defendant's alleged misrepresentations, thus he cannot state a claim under the Illinois Consumer Fraud Act.

**C.   Plaintiff Fails to State a Claim For Unfairness Under the Illinois Consumer Fraud Act.**

Plaintiff's complaint alleges that "Fajerstein engaged in deceptive or unfair acts or practices, in violation of 815 ILCS 505/2…" (¶ 29, 31) (emphasis added).  However, plaintiff has failed to allege any facts, let alone sufficient facts, to state a claim under the Illinois Consumer Fraud Act for "unfairness" or unfair acts.  Recovery under the Illinois Consumer Fraud Act is available for unfair as well as deceptive conduct. *Robinson v. Toyota Motor Credit Corp.*, 201 Ill. 2d 403, 417 (2002).  The factors to be considered in determining unfairness are: (1) whether the practice offends public policy; (2) whether it is immoral, unethical, oppressive, or unscrupulous; (3) whether it causes substantial injury to consumers. *Id.* at 417-418, citing *Federal Trade Comm'n v. Sperry & Hutchinson Co.*, 405 U.S. 233, 244, n. 5, (1972).  Plaintiff has not alleged or identified any public policies that were violated by defendants' conduct or any other facts sufficient to state a cause of action for unfair acts or practices under the Act.

**IV.  Rule 12(B)(6) Motion To Dismiss – Second Claim For Relief Breach of Contract.**

Defendants rely on their arguments under sections I and II above.  While the integration clause in the attached exhibit may affect the ability of the plaintiff to characterize the contract terms, reliance on that exhibit for that purpose in this count, which exhibit is not attached to the Complaint, would convert the motion into a motion for summary judgment, which defendants do not want to do at this stage of the case.

**V. Rule 12(B)(6) Motion To Dismiss – Third Claim For Relief Common Law Fraud.**

Plaintiff's fraud claim alleges that plaintiff discussed the purchase of a diamond with defendant Fajerstein, and plaintiff allegedly specified the type of diamond he wanted: "an investment-quality diamond weighing seven or eight carats that did not have "strong blue fluorescence" (Compl. ¶¶2, 12-14). Defendant allegedly assured plaintiff that "he could locate a diamond with the characteristics" sought by the plaintiff (Compl. ¶15). Plaintiff further alleges that, unbeknownst to plaintiff, Fajerstein did not have the ability or intention to obtain the specified stone and that he had no intention of returning plaintiff's deposit (Compl. ¶15). But plaintiff sent the $150,000 deposit to defendant after defendant "assured" plaintiff that he "could locate a diamond" with the alleged characteristics sought by plaintiff (Compl. ¶¶15, 16). According to plaintiff, defendant concealed the nature of the stone that was found (Compl. ¶17), but plaintiff inconsistently alleges that defendant sent a GIA certification report describing the characteristics of the stone that was procured (Compl. ¶19).

The Court of Appeals, in *United States ex rel. Fowler v. Caremark RX, L.L.C.*, 496 F.3d 730, 740 (7th Cir. 2007), reiterated the heightended pleading standard for allegations of fraud under F.R.Civ.P. 9(b). Because this Complaint alleges promissory fraud, *i.e.*, an alleged false promise or assurance to do something in the future, rather than a misrepresentation of past fact, the rule 9 heightened pleading standard must be applied to the elements of, and exceptions to, a promissory fraud claim. The case of

*Sys. Am., Inc. v. Providential Bancorp, Ltd.*, 2006 U.S. Dist. LEXIS 6996 (N.D. Ill. 2006), discussed the requirements that must be met to plead a promissory fraud case:

> "Here, Plaintiffs allege that Defendants made a series of "false promises to induce plaintiffs to provide them with the services of plaintiffs and with the use of a software program" and that "at the time the defendants made these representations, they did not intend to perform these promises." (R. 51-1; Pls.' First Am. Compl. P53.) **Fraud predicated on an alleged promise made without any intent to perform is characterized as "promissory fraud" which is not actionable under Illinois law "unless it is part of a scheme to defraud, that is, unless it is one element of a pattern of fraudulent acts."** *Speakers of Sport, Inc. v. ProServ, Inc.*, 178 F.3d 862, 866 (7th Cir. 1999) (citing *HPI Health Care Servs., Inc. v. Mt. Vernon Hosp., Inc.*, 131 Ill.2d 145, 545 N.E.2d 672, 682, 137 Ill.Dec. 19 (Ill. 1989)) (other citations omitted). … The Court therefore reviews the allegations of Plaintiffs' First Amended Complaint to determine whether they articulate a "pattern of fraudulent acts," and if so, whether the allegations meet Rule 9(b)'s particularity requirements." (emphasis added)

Illinois permits a claim of promissory fraud only if it is "particularly egregious." *Desnick v. ABC, Inc.*, 44 F.3d 1345, 1354 (7th Cir. 1995). Indeed, the Court of Appeals, in *Bower v. Jones*, 978 F.2d 1004, 1012 (7th Cir. 1992), observed that promissory fraud claims can only be pursued in "truly exceptional circumstances." The *Bower* court further observed that: "Promissory fraud is a disfavored cause of action in Illinois because fraud is easy to allege and difficult to prove or disprove. Thus, the burden on a plaintiff claiming promissory fraud is deliberately high.") (internal citation omitted).

It has long been Illinois law that "'neither a knowledge of inability to perform, nor an intention not to do so," makes a transaction fraudulent. *Smith* v *Prime Cable* of *Chicago,* 276 Ill. App. 3d 843, 855 (1st Dist, 1995) (citing *Miller* v. *Sutliff,* 241 Ill.521, 526-27 (1909) (emphasis added); *Gass v.*National Contairzer Corp., 171 Fa Supp. 441, 445 (S.D. Ill. 1959) (applying Illinois law and holding "mere breach of contract does not

amount to a fraud, and neither a knowledge of inability to perform, nor an intention not to do so, would make the transaction fraudulent."); *Bank of Lincolnwood* v. *Comdisco,* 111 Ill. App. 3d 822, 829 (1st Dist. 1982) ("[t]o sustain unsupported allegations of a plan or scheme as sufficient ... would only invite this type of pleading every time multiple parties, who are jointly obligated under a contract, elect not to perform"); *LeDonne* v. *AXA Equitable Life Ins. Co.,* 411 F. Supp. 2d 957, 961 (N.D. Ill. 2006)(dismissing plaintiffs fraud claim with prejudice where plaintiff alleged two separate false assurances by defendant that plaintiff would receive payment under an insurance policy if plaintiff purchased the policy and was then unable to work, finding plaintiffs' allegations did not allege that defendants "perpetrate this type of fraud as a regular practice, or on any grand scale" and thus failed to allege conduct rising to "the 'elaborate artifice of fraud' required to sustain a promissory fraud action under Illinois law.").

The essence of this case is a breach of contract case. Under Illinois law, "when a defendant is already contractually bound to the plaintiff, his assurance that he will perform in accordance with the contract is simply a reiteration of his original promise ... [i]t creates no additional liability in contract, let alone in tort." *Hi-Grade Cleaners, Inc.* v. *American Permac, Inc.,* 561 F. Supp. 643, 644 (N.D. Ill. 1982) (Illinois law); *Quantum Mgmt. Group Ltd.* v. *University of Chicago Hosps.,* No. 99 C 2248, 2000 WL 1221632, at *10 (N.D. Ill. Aug. 18,2000) (refusing to award damages for independent tort claims as duplicative where award for breach of contract compensated for loss).

See also, *Rossi Distribs. v. Lavazza Premium Coffees Corp.*, 2002 U.S. Dist. LEXIS 18807 (N.D. Ill. 2002)(Judge Kocoras) (Promissory fraud and unjust enrichment claim

dismissed); *Calderon v. Southwestern Bell Mobile Sys., L.L.C.*, 2003 U.S. Dist. LEXIS 18257 (N.D. Ill. 2003)("promises of future conduct are not actionable under Illinois law unless they are "particularly egregious" or "embedded in a larger pattern of deceptions or enticements that reasonably induces reliance and against which the law ought to provide a remedy."); *Gage-Wilson v. Chase Manhattan Mortg. Corp.*, 2006 U.S. Dist. LEXIS 35894 (N.D. Ill. 2006)(Promissory fraud claim dismissed).

Plaintiff's Complaint does not allege with specificity the type of pattern contemplated by *Speakers of Sport, Inc. v. ProServ, Inc.*, 178 F.3d 862, 866 (7th Cir. 1999). Nor does it allege a "grand scale" or "elaborate artifice of fraud." Instead, the Complaint alleges that plaintiff claims he made a specific request for a specific diamond that defendant said he could get, but that he did not get because plaintiff did not want a large diamond with "blue fluorescence." At most, those allegations amount to a breach of contract, not fraud. These allegations do not show the "truly exceptional circumstances" discussed in the *Bower* case.

**VI. Rule 12(B)(6) Motion To Dismiss – Fourth Claim For Relief Conversion.**

Plaintiff alleges that defendants converted his money. But plaintiff has not properly alleged a claim for conversion of money. In *Kentuckiana Healthcare, Inc. v. Fourth St. Solutions, LLC*, 517 F.3d 446, 447 (7th Cir. 2008), the Court of Appeals stated:

> "If you simply owe someone money and fail to pay it, you have broken a contract but you have not taken your creditor's property."

Similarly, in *Horbach v. Kaczmarek*, 288 F.3d 969, 975, 978 (7th Cir. 2002), the Court of Appeals held that:

> "… **in order to establish the conversion of money under Illinois law, a plaintiff must show that he had "a 'right to a specific fund or specific money in coin or bills**.'" …. Horbach, however, was not claiming entitlement to a specific fund or account (let alone specific coins or bills), but rather a particular amount of money. His claim thus did not meet this particular criterion of a conversion claim. ... An asserted right to money normally will not support a claim for conversion. Only if the money at issue can be described as "specific chattel," … in other words, "a specific fund or specific money in coin or bills" …. Moreover, the plaintiff's right to the money must be absolute. ... "It must be shown that the money claimed, or its equivalent, at *all times* belonged to the plaintiff and that the defendant converted it to his own use."

288 F.3d at 975 and 978 (emphasis added in part, citations omitted).

Plaintiff's Complaint does not allege any of the foregoing criteria. There are no allegations regarding a specific fund. *Rossario's Fine Jewelry, Inc. v. Paddock Publ'n., Inc.*, 443 F. Supp. 2d 976, 980 (N.D. Ill. 2006). Nor is it alleged that the plaintiff's right to the money is "absolute" and that the money belonged at all times to the plaintiff. Therefore, this conversion claim should be dismissed.

### VII. Rule 12(B)(6) Motion To Dismiss – Fifth Claim For Relief Money Had and Received.

This equitable claim cannot be brought where, as here, the plaintiff is alleging and pursuing a breach of an express contract. That was the ruling in the case of *In re Factor VIII...*, 2002 U.S. Dist. LEXIS 12645 (N.D. Ill. 2002):

> "**Equitable principles, such as** quasi-contract, unjust enrichment and **money had and received do not apply if the parties have an express contract on the subject in question**."

Therefore, this claim should be dismissed.

**VIII. Rule 12(B)(6) Motion To Dismiss – Fifth Claim For Relief Unjust Enrichment.**

The same result as above obtains where an unjust enrichment claim is pleaded along with a breach of contract claim. *Rossi Distribs. v. Lavazza Premium Coffees Corp.*, 2002 U.S. Dist. LEXIS 18807 (N.D. Ill. 2002)(Judge Kocoras) (unjust enrichment claim dismissed); *Watts v. Advance Transformer Co.*, 2002 U.S. Dist. LEXIS 19897 (N.D. Ill. 2002)(Judge Kocoras)("… unjust enrichment claim is not appropriate where a valid contract governs the rights of the parties."). The Court of Appeals reiterated that rule in *Prima Tek II, L.L.C. v. Klerk's Plastic Indus.*, 525 F.3d 533, 540-541 (7th Cir. 2008). *See also, Keck Garrett & Assocs. v. Nextel Communs., Inc.*, 517 F.3d 476, 487 (7th Cir. 2008); *Shapo v. O'Shaughnessy*, 246 F. Supp. 2d 935, 968-969 (N. D. Ill. 2002)("… **If a plaintiff … allege[s] the existence of a legally enforceable contract, then an unjust enrichment claim can be dismissed under Illinois law**….")(emphasis added).

WHEREFORE, Defendants, RONALD FAJERSTEIN, FAJERSTEIN DIAMOND IMPORTERS & CUTTERS, INC., and ANTWERP DIAMOND IMPORTERS & CUTTERS, INC., respectfully request this Honorable Court to dismiss this case.

RONALD FAJERSTEIN, *et. al.*,

By: /s/ Philip J. Nathanson
Philip J. Nathanson

Philip J. Nathanson
THE NATHANSON LAW FIRM
120 North LaSalle Street - Suite 1000
Chicago, IL 60602
(312) 782-3322
philipj@nathansonlawfirm.com

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| RICHARD THOMPSON, Trustee of The Thompson Family Trust | ) ) ) | |
| Plaintiff, | ) ) | |
| vs. | ) ) | No.   08 CV 3240 |
| RONALD M. FAJERSTEIN, FAJERSTEIN DIAMOND IMPORTERS & CUTTERS, INC., and ANTWERP DIAMOND IMPORTERS & CUTTERS, INC., | ) ) ) ) ) ) ) | Judge Kocoras<br><br>Magistrate Judge Mason |
| Defendants. | ) | |

**AFFIDAVIT OF RONALD M. FAJERSTEIN**

RONALD M. FAJERSTEIN, being first duly sworn on oath, deposes and states as follows:

1.   I am an individual defendant, and the principal of the corporate defendants.

2.   On February 5, 2008, the attached written agreement was prepared by the company referenced at the top of the agreement, confirming the agreement that I had reached with Mr. Thompson for the purchase and sale of the diamond described in the attached agreement.

3.   On February 6, 2008, I caused a member of my staff to fax the attached agreement to Mr. Thompson, and that fax went through to his fax number, as shown by the attached fax confirmation sheet, which is a true and accurate copy of that sheet.

4.   The attached agreement, which is an exhibit to this affidavit, is a true and accurate copy of the original agreement that was prepared on the date that it bears, and that was faxed on February 6, 2008, to Mr. Thompson.

## VERIFICATION OF THE AFFIDAVIT OF RONALD M. FAJERSTEIN

STATE OF ILLINOIS    )
                     )  SS
COUNTY OF COOK       )

RONALD M. FAJERSTEIN being first duly sworn on oath, deposes and states that he has read and reviewed the foregoing matters that are contained in his Affidavit; that he has knowledge pertaining to those matters; and that the matters contained in that Affidavit are true and correct.

_____
RONALD M. FAJERSTEIN

SUBSCRIBED and SWORN to
before me this 16TH day
of July, 2008.

_____
Notary Public



"OFFICIAL SEAL"
NICOLE ROTH
NOTARY PUBLIC, STATE OF ILLINOIS
MY COMMISSION EXPIRES 3/23/2009

# INVOICE

CLIENT: Rick Thompson

TEL:

**FAJERSTEIN**
DIAMOND IMPORTERS & CUTTERS, INC
67 East Madison Street, Suite 1730
Chicago, IL 60603
Tel: (312) 346-3342 (FDIC)
Fax: (312) 346-8888

DATE: 2/5/8
TERMS OF PAYMENT: wire
BROKER: RHF

Your receipt of the merchandise described on this document constitutes your agreement to pay the total amount indicated for each item described hereon to Fajerstein Diamond Importers and Cutters, Inc. ("FDIC") within thirty (30) days of receiving said items. The recipient of the merchandise herein described agrees to pay all of FDIC's costs, including court costs, interest (18% per annum to begin accruing after 30 days), reasonable attorneys' fees and any and all ancillary expenses. In the event it is necessary for FDIC to enforce its rights hereunder, Recipient further consents to the jurisdiction of the Circuit Court of Cook County, Illinois and agrees that any rights and responsibilities set forth in this document shall be adjudicated in the Circuit Court of Cook County, Illinois. Recipient hereby waives the right to a trial by jury. Receipt of the merchandise described hereon constitutes your agreement to these terms, which represent the parties' entire contract with respect to the merchandise hereon described and which cannot be varied by oral statements, dealings with respect to other merchandise or any contrary custom of the trade.

| REMARKS | WEIGHT | QUALITY | LOT NUMBER | PRICE $/CT | TOTAL AMOUNT |
|---|---|---|---|---|---|
| 1BB | 11.64 | GSI1 | w/custom made mounting | | $450,000.00 |
| | | | Deposit 1/25/08 | | <150,000.00> |
| | | (Bought per Rick) | | | |
| | | | Balance | | $300,000.00 |
| | | | please wire | | |

Signature of Recipient

HP Officejet J5700 All-In-One series

Fax Log for
Fajerstein Diamonds
13123468888
Feb 06 2008 5:11PM

## Last Transaction

| Date | Time | Type | Station ID | Duration | Pages | Result |
|---|---|---|---|---|---|---|
| Feb 6 | 5:10PM | Fax Sent | 16502400405 | 0:36 | 1 | OK |