IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| RICHARD THOMPSON, Trustee of The Thompson Family Trust, <br><br> Plaintiff, <br><br> vs. <br><br> RONALD M. FAJERSTEIN, FAJERSTEIN DIAMOND IMPORTERS & CUTTERS, INC., and ANTWERP DIAMOND IMPORTERS & CUTTERS, INC., <br><br> Defendants. | No. 08 CV 3240 <br><br> Judge Kocoras <br><br> Magistrate Judge Mason |

**<u>DEFENDANTS' REPLY IN SUPPORT OF THEIR RULE 12 MOTION TO DISMISS</u>**

Defendants, RONALD M. FAJERSTEIN, FAJERSTEIN DIAMOND IMPORTERS & CUTTERS, INC. and ANTWERP DIAMOND IMPORTERS & CUTTERS, INC., by and through their attorney, PHILIP J. NATHANSON of THE NATHANSON LAW FIRM, submit this Reply in support of their F.R.Civ.P. 12 motion to dismiss this case.

<u>INTRODUCTION</u>

In a transparent attempt to sully this Court, plaintiff begins his Response with overblown rhetoric and hyperbole. Thus plaintiff asserts that "Defendants never deny the swindle or the fraud here" because defendants "concede" that plaintiff sent the money to defendants (Resp. p. 1). Of course the very purpose of a rule 12(b)(6) motion to dismiss is to assume the facts alleged are true, and to argue the legal insufficiency of those facts to state claim upon which relief can be granted. Such an approach is not a

concession; rather, it is the legal standard of review under F.R.Civ.P. 12(b)(6). Worse yet, plaintiff attaches two complaints from other lawsuits as exhibits in support of plaintiff's fraud claim. Obviously a complaint from another lawsuit proves nothing. And since those other complaints are offered to refute a F.R.Civ.P. 12(b)(6) motion to dismiss, such documents extrinsic to the complaint filed in the case at bar cannot be considered. Defendants ask this Court to strike those other complaints from the Response.

### I. Rule 12(b)(1) Motion To Dismiss For Lack Of Subject Matter Jurisdiction; and Rule 12(b)(7) Motion to Dismiss for Failure to Join a Party Under Rule 19.

Plaintiff's Response asserts that defendants "do not dispute that the Complaint adequately alleges diversity jurisdiction by stating that Thompson is a trustee of the Thompson Family Trust and he maintains his principal residence in Atherton, California." (Resp. p. 4) But plaintiff is wrong. Defendants do indeed dispute in their motion to dismiss that plaintiff has properly alleged diversity. Indeed, in pages 2-4 of the motion to dismiss, defendants argue that in order to use the citizenship (not principal residence) of a trustee for diversity purposes, that trustee must hold title and manage property for the benefit of beneficiaries. *Chappedelaine* v. *Dechenaux*, 4 Cranch 306, 308 (1808); *Monahan v. Holmes*, 154 F. Supp. 2d 363 (D. Conn. 2001) ("The citizenship of trustees determines diversity jurisdiction over a trust, where the trustees are the real parties in interest in the controversy.") However, neither the complaint nor the plaintiff's affidavit says anything about the nature of the Thompson Family Trust. There are no allegations regarding the nature of the trust property to

which the trustee holds legal title and manages, that would enable this Court to conclude that the trust is the real party in interest when the issue involves the purchase of a 7-8 carat diamond for Valentine's Day.  And that is no small matter here.  Neither the complaint nor the Response offers any explanation why the family trust was purchasing a large diamond for Mr. Thompson's wife on Valentine's Day.  Nor is there any explanation offered as to why Exhibit B to the complaint is cast in individual terms (Fajerstein would "owe me"), rather than in terms of a trustee of a trust seeking to recover trust property.  In *Navarro Savings Ass'n v. Lee*, 446 U.S. 458, 465-66, 100 S. Ct. 1779 (1980), the Supreme Court prescribed the criteria and characteristics that must be used to assess the citizenship and diversity issues in a case involving a trust:

> "… a trustee is a real party to the controversy for purposes of diversity jurisdiction when he **possesses certain customary powers to hold, manage, and dispose of assets for the benefit of others. The trustees in this case have such powers**. At all relevant times, **Fidelity operated under a declaration of trust that authorized the trustees to take legal title to trust assets, to invest those assets for the benefit of the shareholders, and to sue and be sued in their capacity as trustees**. **Respondents filed this lawsuit in that capacity**. ….
> We conclude that these respondents are active trustees whose control over the assets held in their names is real and substantial. That the trust may depart from conventional forms in other respects has no bearing upon this determination. Nor does Fidelity's resemblance to a business enterprise alter the distinctive rights and duties of the trustees.  **There is no allegation of sham or collusion**. See 28 U. S. C. § 1359; *Bullard* v. *Cisco, supra*, at 187-188, and n. 5.  **The respondents are not "naked trustees" who act as "mere conduits" for a remedy flowing to others**. *McNutt* v. *Bland*, 2 How., at 13-14; see *Browne* v. *Strode*, 5 Cranch 303 (1809). They have legal title; they manage the assets; they control the litigation. In short, they are real parties to the controversy. For more than 150 years, **the law has permitted trustees who meet this standard to sue in their own right, without regard to the citizenship of the trust beneficiaries**."

446 U.S. 458, 464-66 (emphasis added).

The complaint and the affidavit contain no allegations or averments regarding any of the foregoing criteria, or trust characteristics, from the *Navarro Savings* case that would enable this Court to determine the existence of diversity jurisdiction. Paragraph 2 of the complaint alleges that in "… January 2008 Thompson contacted Fajerstein, a diamond dealer, and provided a detailed description of a diamond he hoped to purchase for his wife as a Valentine's Day gift."  That sure does not sound like a transaction with a trust that possesses the characteristics set forth in the *Navarro Savings* case.  Plaintiff chooses to address only the indispensable party issue in its Response, and ignores these other diversity jurisdiction issues raised by defendants. The Complaint should therefore be dismissed for lack of subject matter jurisdiction.

## II. Rule 12(B)(3) Motion To Dismiss Pursuant to the Forum Selection Clause

Plaintiff does not deny receiving the Fajerstein contract that was transmitted via fax.  Plaintiff's sole argument on this issue is that a condition precedent to the operation of the forum selection clause in that document was "receipt" of the diamond.  But plaintiff cites no case on the issue whether defendants' offer of the diamond to plaintiff, and plaintiff's refusal to accept delivery, *i.e.*, plaintiff's refusal to allow a "receipt" of the diamond to occur (Compl. ¶¶19-20), amounted to a constructive receipt under the constructive receipt doctrine.  *Marks v. United States*, 24 Cl. Ct. 310, 318-319 (1991) ("…Although Mr. Marks does assert that he has not actually received a refund of his deposit, the undisputed facts show that Mr. Marks has constructive receipt inasmuch as it was made available to him and he could have collected his money at anytime…"); *Jacobowitz v. Commissioner*, T.C. Memo 1968-261; 1968 Tax Ct. Memo LEXIS 38; 27 T.C.M.

4

(CCH) 1387; T.C.M. (RIA) 68261 (1968).  Plaintiff should not be heard to argue that he did not receive something that he refused to receive.

### III. Rule 12(B)(6) Motion To Dismiss – First Claim For Relief Illinois Consumer Fraud and Deceptive Business Practices Act.

Plaintiff's complaint contains defendants' alleged contractual promises.  But failure to fulfill contractual obligations does not convert a suit for breach of contract into a consumer fraud action.  Unlike plaintiff's pleading, The Consumer Fraud Act implicates consumer protection concerns.  *Lake County Grading Co. v. Advance Mechanical Contractors,* 275 Ill. App. 3d 452, 459-460(2nd Dist. 1995).  In spite of this, plaintiff's response argues that plaintiff states a claim under the ICFA because plaintiff alleges that defendants conduct was "misleading and deceptive." However, plaintiff's allegations fail to state a claim for fraudulent misrepresentation under the ICFA because the alleged statements are not "deceptive" as a matter of law under the ICFA and plaintiff alleges that he was not deceived by the statements.

"Puffing denotes the exaggerations reasonably expected of a seller as to the degree of quality of his or her product, the truth or falsity of which cannot be precisely determined.  Puffing in the usual sense signifies meaningless superlatives that no reasonable person would take seriously, and so it is not actionable as fraud." *Avery v. State Farm Mut. Auto. Ins. Co.*, 216 Ill. 2d 100, 173-4 (2005), *Barbara's Sales, Inc. v. Intel Corp.*, 227 Ill. 2d 45, 72-3 (2007).  In *Avery,* the Illinois Supreme Court held that the statements "quality replacement part" and "very high performance criteria," in the context of insurance policies, are mere "puffing" and cannot form the basis for a claim

under the ICFA because they are not considered "deceptive" under the Consumer Fraud Act. *Avery,* 216 Ill. 2d at 174-4. Similarly, in *Barbara Sales, Inc.*, the Illinois Supreme Court held that the representation in the name "Pentium 4," that the processor is the best and fastest on the market, is not considered "deceptive" within the purview of the ICFA. *Barbara's Sales, Inc.* 227 Ill. 2d at 72-3.

According to plaintiff's response, the allegations of the complaint are a cognizable claim because "defendants lied in order induce Thompson to enter into a contract." However, the complaint actually alleges that Thompson first met Fajerstein in California to discuss the possibility of purchasing a diamond. "Fajerstein represented that he had significant experience buying diamonds" and that Fajersteiin did not usually search for specific diamonds for consumers, but he would be willing to make an exception for Thompson and look for a specific stone". (Compl. ¶ 12). According to plaintiff's response, these statements constitute a misrepresentation of defendant's services (Plft. Resp. 8). However, pursuant to Illinois law these statements are clearly "puffing." Some months later, the complaint alleges, plaintiff called defendants and inquired about purchasing a diamond for his wife, before Valentine's Day, that was an "investment-quality" diamond weighing seven or eight carats, that cost approximately $300,000 and did not have "strong blue fluorescence." (Compl. ¶13-15). Plaintiff argues that these allegations are the deceptive acts that "induced Thompson to enter into a contract."

Nor is defendant's other alleged statement regarding the quality of the diamond as "one of the most beautiful stones" actionable (Compl. ¶ 17). As a matter of law, these

6

statements are not actionable under the ICFA, as these allegations constitute subjective distinctions relating to quality rather than "deception" under the Consumer Fraud Act.

Plaintiff cites no case where statements similar to those alleged herein were held actionable pursuant to the ICFA. Nor does plaintiff's response make any attempt to distinguish the cases cited by defendants, or the statements contained therein that the Illinois Supreme Court has held are not "deceptive" as a matter of law. Instead, plaintiff cites two cases, decided prior to *Avery*, where a motion to dismiss an ICFA count was denied, wherein the plaintiff alleged a misrepresentation of the <u>fact</u> that certain monies were entirely being disbursed to third parties when they in fact were partially retained by the defendant. *Lindsey v. Ed. Johnson Oldsmobile, Inc.*, No. 95-7306, 1996 WL 411336, ay *5 (N.D. Ill. July 19, 1996).

Further, plaintiff argues that Thompson was deceived by Fajerstein's statements that he "could" procure a diamond to conform to plaintiff's specifications. However, these statements, as discussed above, are plainly "puffing" and cannot form the basis for a ICFA claim. Further, according to the allegations of the complaint Fajerstein located a diamond, prior to Valentine's Day, yet plaintiff declined to wire any additional funds until he could verify the diamond conformed to his specifications. And upon receipt of the GIA certification, plaintiff rejected the diamond because of "strong blue fluorescence" (Compl. ¶17-20). Contrary to plaintiff's argument, these allegations plead that plaintiff was in fact not deceived by defendants, thus plaintiff has failed to plead that he was deceived by the alleged misrepresentations and has failed to plead proximate causation. *Avery*, 216 Ill. 2d at 199.

**A.  Plaintiff Fails to State a Claim For Unfairness Under the Illinois Consumer Fraud Act.**

Notwithstanding defendants' prior argument that plaintiff's complaint alleges only that "Fajerstein engaged in deceptive or unfair acts or practices, in violation of 815 ILCS 505/2…" (¶ 29, 31) (emphasis added), plaintiff has failed to explain in his response why he failed to allege any facts, let alone sufficient facts, to state a claim under the Illinois Consumer Fraud Act for "unfairness" or unfair acts.  *Robinson v. Toyota Motor Credit Corp.*, 201 Ill. 2d 403, 417 (2002).  The factors to be considered in determining unfairness are: (1) whether the practice offends public policy; (2) whether it is immoral, unethical, oppressive, or unscrupulous; (3) whether it causes substantial injury to consumers. *Id*. at 417-418, citing *Federal Trade Comm'n v. Sperry & Hutchinson Co.*, 405 U.S. 233, 244, n. 5, (1972).  Plaintiff has not alleged or identified any public policies that were violated by defendants' conduct or any other facts sufficient to state a cause of action for unfair acts or practices under the Act.

**IV. Rule 12(B)(6) Motion To Dismiss – Second Claim For Relief Breach of Contract.**

Defendants relied on their arguments regarding subject matter jurisdiction and venue.  Defendants at this time have not moved to dismiss the breach of contract claim for failure to state a claim upon which relief may be granted under F.R.Civ.P. 12(b)(6).

### V. Rule 12(B)(6) Motion To Dismiss – Third Claim For Relief Common Law Fraud.

The case at bar involves one transaction for one diamond between two people. Plaintiff tries to convert this into a "scheme to defraud" by arguing that this one transaction involved several events in it. But that is not the test for a "scheme to defraud." Plaintiff relies on the Illinois case of *HPI Health Care Services, Inc. v. Mt. Vernon Hospital, Inc., et al.*, 131 Ill.2d 145, 169, 545 N.E.2d 672, 683 (1989), to support his promissory fraud claim. But the *HPI Health Care Services* case involved a pharmaceutical company satisfying multiple requests for goods for multiple individuals based on the hospital's repeated lies. It did not involve one transaction, as the Supreme Court of Illinois held:

> "The scheme alleged in count VIII of the complaint consisted of repeatedly making false promises of future payment in order to induce HPI to continue provision of pharmaceutical goods and services."

131 Ill.2d at 169.

Plaintiff also cites in that regard the case of *Steinberg v. Chicago Medical School*, 69 Ill. 2d 320; 371 N.E.2d 634 (1977). But the *Steinberg* case also involved multiple applicants to the defendant school in multiple transactions. Plaintiff's Complaint therefore does not allege with specificity the type of pattern contemplated by *Speakers of Sport, Inc. v. ProServ, Inc.,* 178 F.3d 862, 866 (7th Cir. 1999), a Seventh Circuit case written by Judge Posner, which defendants cited in the motion to dismiss, and plaintiff ignored in his Response. In the *Speakers of Sport* case, the Seventh Circuit enforced "…the principle of Illinois law that promissory fraud is not actionable unless it is part of a

9

scheme to defraud, that is, **unless it is one element of a pattern of fraudulent acts**....
The promise of endorsements was puffing not in the most common sense of a cascade of extravagant adjectives but in the equally valid sense of a sales pitch that is intended, and that a reasonable person in the position of the "promisee" would understand, to be aspirational rather than enforceable--an expression of hope rather than a commitment."
*Id.*, 178 F.3d at 866 (emphasis added).

Plaintiff similarly ignores defendants' argument that Illinois permits a claim of promissory fraud only if it is "particularly egregious." *Desnick v. ABC, Inc.*, 44 F.3d 1345, 1354 (7th Cir. 1995). Indeed, the Court of Appeals, in *Bower v. Jones*, 978 F.2d 1004, 1012 (7th Cir. 1992), observed that promissory fraud claims can only be pursued in "truly exceptional circumstances." The *Bower* court further observed that: "Promissory fraud is a disfavored cause of action in Illinois because fraud is easy to allege and difficult to prove or disprove. Thus, the burden on a plaintiff claiming promissory fraud is deliberately high.") (internal citation omitted). Plaintiff makes no attempt to deal with these clearly applicable pronouncements of the Court of Appeals in this circuit.

Nor does the complaint allege a "grand scale" or "elaborate artifice of fraud." Instead, the Complaint alleges that plaintiff claims he made a specific request for a specific diamond in one transaction, and that defendant said he could get, but that he did not get because plaintiff did not want a large diamond with "blue fluorescence." These allegations neither show "particularly egregious" conduct nor the "truly exceptional circumstances" discussed in the *Desnick* and *Bower* cases. The Response is similarly silent regarding the other cases cited by defendants in the motion to dismiss.

To be sure, plaintiff cites two district court cases, *Air Tiger Express v. Barclay*, 2008 WL 3153333 (N.D. Ill. 2008), and *Pulphus v. Sullivan*, 2003 WL 1964333 (N.D. Ill. 2003), on the scheme to defraud issue. The *Air Tiger* case involves a faxed check that was faxed to induce shipment, but was never mailed. Whether or not the district judge properly applied the Seventh Circuit cases in that case is a matter for this Court to decide. But the description of the facts that were held to constitute a scheme in the *Pulphus* case are certainly closer to the scheme exception than this case or than the *Air Tiger* case. Judge Plunkett held in the *Pulphus* case that:

> "The conduct alleged by Vanzant meets that standard. She says that: (1) she is a seventy-three year old, unsophisticated consumer who owned a home in desperate need of repairs (Compl.¶¶ 5, 45, 70); (2) she hired Sullivan's company to replace some windows and a door, which was done satisfactorily ( *id.* ¶ 46); (3) a few months later, Sullivan told her he would remodel her whole house, but she would have to take out a $50,000.00 mortgage to finance the improvements ( *id.* ¶¶ 47-49, 52-59); (4) more than $45,000.00 of the loan amount went to Sullivan, though he did little work on the house ( *id.* ¶¶ 57, 60, 68); (5) when she complained, Sullivan told her she would have to "re-do" the mortgage to have the work done, though he would make eight months of the payments himself to compensate for the delay ( *id.* ¶ 69); (6) he then had her take out an $80,000.00 mortgage, nearly $30,000.00 of which he pocketed ( *id.* ¶¶ 73, 76-78); (7) Sullivan did no further work on the house and, when Vanzant complained to the police, he produced contracts and releases, on which her signature had been forged, to refute her claims ( *id.* ¶ 86). The facts as Vanzant alleges them are egregious and reveal a larger pattern of deceptions that reasonably induced her reliance. Thus, Vanzant has stated a viable fraud claim against Sullivan."

It probably is quite a stretch for a wealthy plaintiff to cite the *Pulphus* case in this case, one involving the purchase of a seven or eight carat diamond as a Valentine's Day gift that was projected to cost around $300,000.

**VI. Rule 12(B)(6) Motion To Dismiss – Fourth Claim For Relief Conversion.**

Plaintiff still claims that he has properly alleged a claim for conversion of money. But such a contention cannot survive the holding in *Horbach v. Kaczmarek*, 288 F.3d 969, 975, 978 (7th Cir. 2002), where the Court of Appeals held that:

> "… **in order to establish the conversion of money under Illinois law, a plaintiff must show that he had "a 'right to a specific fund or specific money in coin or bills**.'" …. Horbach, however, was not claiming entitlement to a specific fund or account (let alone specific coins or bills), but rather a particular amount of money. His claim thus did not meet this particular criterion of a conversion claim. ... An asserted right to money normally will not support a claim for conversion. Only if the money at issue can be described as "specific chattel," … in other words, "a specific fund or specific money in coin or bills" …. Moreover, the plaintiff's right to the money must be absolute. ... "It must be shown that the money claimed, or its equivalent, at *all times* belonged to the plaintiff and that the defendant converted it to his own use."

288 F.3d at 975 and 978 (emphasis added in part, citations omitted).

Plaintiff is not now, and was not before suit, seeking the return of the very check or the very coin and bills sent by plaintiff to defendant. Rather, plaintiff was seeking the return of an amount of money, not a specific fund of money. There are no allegations regarding a specific fund of money in the complaint. *Rossario's Fine Jewelry, Inc. v. Paddock Publ'n., Inc.,* 443 F. Supp. 2d 976, 980 (N.D. Ill. 2006). Nor is it alleged that the plaintiff's right to the money was or is "absolute" and that the money belonged at all times to the plaintiff. Had defendants performed as plaintiff claimed they should have, plaintiff would not have been entitled to his deposit back. Therefore, this conversion claim should be dismissed. Specifying a check that was sent does not mean that a plaintiff is seeking the return of that specific check.

**VII. Rule 12(B)(6) Motion To Dismiss – Fifth and Sixth Claim For Relief Money Had and Received and Unjust Enrichment.**

These equitable claim cannot be brought where, as here, the plaintiff is alleging and pursuing a breach of an express contract. That was the ruling in the case of *In re Factor VIII…*, 2002 U.S. Dist. LEXIS 12645 (N.D. Ill. 2002):

> "**Equitable principles, such as** quasi-contract, unjust enrichment and **money had and received do not apply if the parties have an express contract on the subject in question**."

The same result obtains where an unjust enrichment claim is pleaded along with a breach of contract claim. *Rossi Distribs. v. Lavazza Premium Coffees Corp.*, 2002 U.S. Dist. LEXIS 18807 (N.D. Ill. 2002)(Judge Kocoras) (unjust enrichment claim dismissed); *Watts v. Advance Transformer Co.*, 2002 U.S. Dist. LEXIS 19897 (N.D. Ill. 2002)(Judge Kocoras)("… unjust enrichment claim is not appropriate where a valid contract governs the rights of the parties."). The Court of Appeals reiterated that rule in *Prima Tek II, L.L.C. v. Klerk's Plastic Indus.*, 525 F.3d 533, 540-541 (7th Cir. 2008). *See also, Keck Garrett & Assocs. v. Nextel Communs., Inc.*, 517 F.3d 476, 487 (7th Cir. 2008); *Shapo v. O'Shaughnessy*, 246 F. Supp. 2d 935, 968-969 (N. D. Ill. 2002)("… **If a plaintiff … allege[s] the existence of a legally enforceable contract, then an unjust enrichment claim can be dismissed under Illinois law**….")(emphasis added).

Plaintiff cites cases where pleading was allowed in the alternative, and plaintiff argues from those cases that it can so plead here because defendants have not unequivocally conceded that the contract alleged by plaintiff was valid and enforceable. But no such concession is required. The dispute here involves the nature and extent of

13

the **terms** of the contract, not whether a contract existed at all in the first instance. Plaintiff claims that certain terms were included in the contract, such as the requirement that the diamond not have blue fluorescence. Defendant has attached a contract to its venue motion that lacks such a term. The fight here will be on the **terms** agreed to, *i.e.,* what was actually agreed to by the parties. Therefore, defendants do not have to concede that the terms pleaded by plaintiff were the terms of the contract in order to argue that there was some contract between the parties, which contract precludes any equitable or unjust enrichment claim.

      WHEREFORE, Defendants, RONALD FAJERSTEIN, FAJERSTEIN DIAMOND IMPORTERS & CUTTERS, INC., and ANTWERP DIAMOND IMPORTERS & CUTTERS, INC., respectfully request this Honorable Court to dismiss this case.

                              RONALD FAJERSTEIN, *et. al.*,

                          By:   /s/  Philip J. Nathanson
                                Philip J. Nathanson

Philip J. Nathanson
THE NATHANSON LAW FIRM
120 North LaSalle Street - Suite 1000
Chicago, IL  60602
(312) 782-3322
philipj@nathansonlawfirm.com