UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| RICHARD THOMPSON, Trustee of ) | | |
| The Thompson Family Trust, ) | | |
| ) | | |
| Plaintiff, ) | | |
| ) | | |
| vs. ) | 08 C 3240 | |
| ) | | |
| RONALD M. FAJERSTEIN, FAJERSTEIN ) | | |
| DIAMOND IMPORTERS & CUTTERS, INC., ) | | |
| and ANTWERP DIAMOND IMPORTERS & ) | | |
| CUTTERS, INC., ) | | |
| ) | | |
| Defendants. ) | | |

## MEMORANDUM OPINION

CHARLES P. KOCORAS, District Judge:

This matter comes before the Court on the motion of Defendants Ronald M. Fajerstein, Fajerstein Diamond Importers & Cutters, Inc. ("FDIC"), and Antwerp Diamond Importers & Cutters, Inc. ("Antwerp") to dismiss the complaint of Plaintiff Richard Thompson pursuant to Federal Rule of Civil Procedure 12(b)(1), (b)(3), (b)(6), and (b)(7). For the reasons set forth below, Defendants' motion is denied in part and entered and continued in part.

## BACKGROUND

According to the complaint, Thompson is a trustee of the Thompson Family Trust; his principal place of residence is in Atherton, California.[1] Fajerstein is alleged

---

[1] Atherton is a suburb of San Francisco.

to be a resident of Illinois. FDIC and Antwerp are Illinois corporations with their principal places of business in Illinois.

Thompson and Fajerstein first met in late 2007 in San Francisco. Thompson expressed interest in purchasing a diamond, and Fajerstein told Thompson that he had significant experience in buying diamonds and had previously done so from a diamond exchange in Antwerp, Belgium. He further told Thompson that he did not usually search for specific diamonds for others but would make an exception in Thompson's case.

In late January 2008, Thompson called Fajerstein in Illinois and expressed interest in purchasing an investment-quality diamond weighing 7-8 carats as a Valentine's Day gift for his wife Rhona. He expected the stone to cost around $300,000. Thompson indicated that the diamond purchased could not have a strong blue fluorescence because the color of the jewel was very important to his wife. He informed Fajerstein that the stone found and its actual price were subject to his approval and that the transaction had to be completed before February 14.

Fajerstein responded that he could locate a diamond that conformed to Thompson's specifications within the stated time frame. He informed Thompson that he would need to wire half of the expected purchase price to Fajerstein to commence the search. The next day Thompson wired $150,000 to the account of "Fajerstein Diamond Importers."

A few days into February, Fajerstein called Thompson to inform him that he had found a stone that fit the stated specifications except that it weighed 11, rather than 7 or 8, carats. Fajerstein stated that the total purchase price for the stone was $450,000 and that he would purchase it on Thompson's behalf if he paid the additional $300,000. When Thompson indicated that he would purchase the diamond, Fajerstein instructed him to immediately wire the balance to Fajerstein. Thompson requested that Fajerstein first provide him with a certification of the jewel's properties from the Gemological Institute of America.

When he received the certification, Thompson found that it indicated that the stone had a strong blue fluorescence despite his instructions to Fajerstein that he did not want a diamond with that characteristic. He immediately informed Fajerstein that he would not purchase the diamond. Thompson then took the certification to a jeweler in California, who informed him that the stone described was worth $300,000-$350,000, not $450,000 as Fajerstein had told him.

Thompson then requested that Fajerstein return the $150,000 that had been wired. At first, Fajerstein attempted to convince Thompson that the blue fluorescence could not be seen, so he should purchase the diamond despite its presence. When Thompson persisted in his refusal to purchase the diamond, Fajerstein told him that he had already purchased the diamond and therefore could not return the money that had been wired

but said he would look for another stone that would meet the previously stated specifications.

On February 20, Fajerstein agreed to return the $150,000. Fajerstein stated that if Thompson wanted him to wire $50,000 that day, he would do so, but he would charge a "restocking fee" of $15,000. About a week later, Fajerstein agreed to pay the full amount in three monthly installments of $50,000 beginning March 5, 2008. Thompson agreed to the payment plan but had not received any money from Fajerstein as of June 4, when the instant complaint was filed.

Thompson's lawsuit asserts jurisdiction based on diversity and alleges violation of the Illinois Consumer Fraud and Deceptive Business Practices Act, breach of contract, fraud, conversion, money had and received, and unjust enrichment. Defendants now move to dismiss based on jurisdiction, failure to join a necessary party, improper venue, and failure to state cognizable claims.

**LEGAL STANDARDS**

**A. Motion to Dismiss for Lack of Subject Matter Jurisdiction**

The purpose of a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(1) is to dismiss claims over which the court lacks subject matter jurisdiction. Jurisdiction is the "power to decide" and must be conferred upon a federal court. *In re Chicago, Rock Island & Pac. R.R. Co.*, 794 F.2d 1182, 1188 (7th Cir. 1986). The party asserting federal jurisdiction bears the burden of establishing that it is present. *See Kontos v. U.S. Dep't*

*of Labor*, 826 F.2d 573, 576 (7th Cir. 1987). When a defendant moves for dismissal pursuant to Fed. R. Civ. P. 12(b)(1), the plaintiff must support his allegations with competent proof of jurisdictional facts. *Thomson v. Gaskillwsa*, 315 U.S. 442, 446, 62 S. Ct. 673 (1942).

**B. Motion to Dismiss for Failure to State a Claim**

Federal Rule of Civil Procedure 12(b)(6) evaluates the legal sufficiency of a plaintiff's complaint. *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). In ruling on a motion to dismiss, a court must draw all reasonable inferences in favor of the plaintiff, construe all allegations of a complaint in the light most favorable to the plaintiff, and accept as true all well-pleaded facts and allegations in the complaint. *Bontkowski v. First Nat'l Bank of Cicero*, 998 F.2d 459, 461 (7th Cir. 1993); *Perkins v. Silverstein*, 939 F.2d 463, 466 (7th Cir. 1991). To be cognizable, the factual allegations contained within a complaint must raise a claim for relief "above the speculative level." *Bell Atlantic Corp. v. Twombly*, — U.S. —, 127 S. Ct. 1955, 1965 (2007). However, a pleading need only convey enough information to allow the defendant to understand the gravamen of the complaint. *Payton v. Rush-Presbyterian-St. Luke's Med. Ctr.*, 184 F.3d 623, 627 (7th Cir. 1999).

## DISCUSSION

**A. Threshold Considerations**

We must first consider the threshold questions of jurisdiction, joinder of necessary parties, and venue. This case involves no claim arising out of federal law;

jurisdiction is predicated only on the diversity of the parties. Trustees may bring diversity actions in their own names, but all active trustees' citizenships are relevant to a determination of whether there is complete diversity. *See Navarro Savings Ass'n v. Lee*, 446 U.S. 458, 465-66, 100 S. Ct. 1779, 1784 (1980); 28 U.S.C. § 1332. Defendants argue that Thompson has not established complete diversity because he has not properly set forth his own citizenship, instead stating only that he "maintains his principal residence" in California. Additionally, defendants argue that Thompson failed to establish the citizenship of any additional trustees.

With his response to the motion to dismiss, Thompson provides a declaration stating that Rhona is the only other trustee of the Thompson Family Trust and that she too lives in California.[2] Regarding the citizenship of the defendants, Thompson states the following: that Ronald Fajerstein maintains his principal residence in Illinois.[3] It is well settled that allegations of residence do not establish citizenship that will support an exercise of diversity jurisdiction. *Steigleder v. McQuesten*, 198 U.S. 141, 143, 25 S. Ct. 616, 617 (1905); *Held v. Held*, 137 F.3d 998, 1000 (7th Cir. 1998); *Guaranty Nat. Title Co., Inc. v. J.E.G. Assocs.*, 101 F.3d 57, 59 (7th Cir. 1996). The current allegations as

---

[2]In reviewing a Rule 12(b)(1) motion to dismiss, the court may look beyond the complaint and view any extraneous evidence submitted by the parties to determine whether subject matter jurisdiction exists. *See United Transp. Union v. Gateway Western Ry. Co.*, 78 F.3d 1209, 1210 (7th Cir. 1996).

[3]The jurisdictional allegations as to the corporate defendants are facially sufficient.

to Thompson and Fajerstein are therefore insufficient. For purposes of this motion, we will assume that this deficiency was the product of a misapprehension on the part of Thompson's counsel rather than a dodge designed to void pleading facts that would either destroy diversity or compromise counsel's obligations to comply with Fed. R. Civ. P. 11(b). However, a case cannot remain in this court without proper jurisdictional allegations, so Thompson is given leave to file an amended complaint correctly stating the citizenship of all parties. Failure to do so on or before October 2, 2008, will result in dismissal for lack of subject matter jurisdiction.

Additionally, Defendants move for dismissal pursuant to Fed. R. Civ. P. 12(b)(7), claiming that Rhona is an indispensable party. To assess whether a party is indispensable, we look to the analysis set out in Fed. R. Civ. P. 19. One consideration is whether the absent party claims an interest relating to the subject of the action that would be compromised if the party was not included in the suit. In the context of a trust, if a co-trustee's ability to protect her interest is unaffected by the litigation, she need not be a party to the action. *See Culbertson v. Libco Corp.*, 983 F.2d 82, 85 (7th Cir. 1993).

In the instant case, Thompson is seeking the return of funds drawn from the trust. Rhona's ability to protect the trust assets is not affected by the relief her husband seeks; rather, it is in her interest for the funds to be returned to the trust as well. Because her interest will not be compromised, she is not a necessary party to this litigation under Rule 19(a), and the failure to join her as a party does not warrant dismissal.

Finally, Defendants move to dismiss on grounds of improper venue. Their argument is premised on language contained in an invoice purportedly sent to Thompson on February 5, 2008, containing a request to wire the $300,000 balance on the $450,000 Fajerstein quoted to Thompson for the 11-carat stone. In relevant part, the invoice states that the recipient of the merchandise described within it "consents to the jurisdiction of the Circuit Court of Cook County, Illinois, and agrees that any rights and responsibilities set forth in this document shall be adjudicated in the Circuit Court of Cook County, Illinois."

A challenge to venue based on a forum selection clause is properly brought as a Rule 12(b)(3) motion to dismiss. *Continental Ins. Co. v. M/V Orsula*, 354 F.3d 603, 606-07 (7th Cir. 2003). A forum selection clause is a creature of contract resulting from consent and agreement. Their terms will be not be enforced if to do so would be unreasonable or unjust. *Paper Exp., Ltd. v. Pfankuch Maschinen GmbH*, 972 F.2d 753, 757 (7th Cir. 1992). There is no indication that Thompson ever received the invoice, let alone consented to it. The form contains a line for the signature of the recipient; that line is blank. Moreover, based off of the allegations of the complaint, which must be taken as true at this point in the proceedings, Thompson was investigating the diamond's certification at this point, so there was no consent to receive it or to agree to the terms set out in the invoice. It would be unreasonable and unjust to remove a party from his

chosen litigation forum based on a clause to which he did not agree. Accordingly, the motion to dismiss for improper venue based on the invoice is denied.

**B. Illinois Consumer Fraud and Deceptive Business Practices Act**

In the first count of the complaint, Thompson claims that Fajerstein engaged in unfair or deceptive practices in violation of the Illinois Consumer Fraud and Deceptive Business Practices Act ("the Act"). 815 ILCS 505/1 *et seq*. The statute renders unlawful any unfair or deceptive practices used in trade or commerce in Illinois. 815 ILCS 505/2.

In order to plead a cognizable claim for a deceptive act, a plaintiff must allege that the defendant engaged in a deceptive act or practice, that the defendant intended the plaintiff would rely on the deception, that the deception occurred in the context of trade or commerce, and that the plaintiff suffered actual damage as a proximate result of the deception. *Avery v. State Farm Mut. Auto. Ins. Co.*, 835 N.E.2d 801, 850 (Ill. 2005). In addition to deceptive conduct, unfair conduct is actionable under the Act. *Robinson v. Toyota Motor Credit Corp.*, 775 N.E.2d 951, 960 (Ill. 2002). A practice is deemed unfair if it offends public policy; is immoral, unethical, oppressive, or unscrupulous; or causes substantial injury to consumers. *Id.* at 960-61.

Defendants move to dismiss for failure to state a cause of action under the Act, arguing three primary points: the transaction is beyond the scope of the Act because it did not primarily occur in Illinois; Thompson's claim alleges nothing beyond a breach

of contract, which is not actionable under the Act; and Thompson has not pleaded a cognizable claim for unfairness under the Act. We address each argument in turn.

The Act governs conduct in trade or commerce if the circumstances that relate to the transaction at issue occur primarily and substantially in Illinois. *Avery*, 835 N.E.2d at 854. This determination must be made based on the facts of each particular case, as there is no bright-line test to determine if a given transaction occurred primarily and substantially in Illinois. *Id.*

According to Defendants, the majority of the circumstances in this transaction occurred outside of Illinois, so it is subject to the dictates of the Act. In support, Defendants point to the initial meeting between Thompson and Fajerstein in California, that the first representations Fajerstein were made during this meeting, and that Thompson lives in California and never alleges that he was physically present in Illinois.

Though not every aspect of the transaction at issue took place in Illinois, the well-pleaded allegations of the complaint set out a deal that occurred primarily and substantially in Illinois. Fajerstein's representation that he had found a diamond meeting Thompson's specifications when in fact it did not occurred in Illinois. His attempts to overcharge Thompson by $150,000 for the 11-carat diamond took place in this state. His falsehood that he had purchased the diamond when he had not was uttered in Illinois. The $150,000 Thompson fronted was wired to Illinois, and the money is allegedly still in Illinois. These allegations sufficiently demonstrate that a

substantial portion of the transaction at issue occurred in Illinois. Thompson's complaint describes a transaction that would be within the scope of the Act, and he can therefore bring a private cause of action for damages. 815 ILCS 505/10a(a).

Defendants next argue that Thompson's claim only alleges a breach of contract, which without more is not actionable under the Act. *Avery*, 835 N.E.2d at 844. However, as is apparent from the factual background set forth above, Thompson alleges more than a mere failure to make good on a promise to perform. Rather, he avers that Fajerstein lied to him about the characteristics of the 11-carat diamond, inflated the price, and told him that he would refund his money when he had no intention of doing so.

Finally, Defendants claim that the conduct alleged in the complaint does not state a claim for an unfair practice under the Act. A federal court sitting in diversity applies federal pleading requirements even when the claim pleaded arises under state rather than federal law. *Muick v. Glenayre Elecs.*, 280 F.3d 741, 743 (7th Cir. 2002). A claim under the Act brought in federal court alleging an unfair practice is not subject to the heightened pleading requirements of Rule 9; only compliance with Rule 8(a) is required. *Windy City Metal Fabricators & Supply, Inc. v. CIT Technical Financing Services, Inc.*, 536 F.3d 663, 669-70 (7th Cir. 2008).

Defendants claim that Thompson has not alleged any facts sufficient to identify one of the three situations described above that can properly establish an unfair act or

practice. While we agree that the complaint does not identify any public policy that is implicated by the Defendants' alleged acts, the recitations of the complaint can be construed to describe an attempt to unscrupulously railroad Thompson into buying a diamond he did not want at a price well above what it was legitimately worth. *See Robinson*, 775 N.E.2d at 960-61. Moreover, Thompson contends that he has been injured to the tune of $150,000 in this consumer transaction, which constitutes a substantial injury to him. Allegations of all three grounds is not necessary to state a claim for an unfair act or practice; any one of the three is sufficient. *Id.* at 961. Since Thompson has set out two of the three grounds discussed in *Robinson*, he states a claim upon which relief can be granted, and the motion to dismiss the first count is denied.

## C. Fraud

Thompson's next claim sounds in fraudulent misrepresentation. To properly make out that type of claim in Illinois, a plaintiff must allege a false statement of material fact that the speaker knows or believes to be false, made with the intent that the plaintiff will act upon it; an act by the plaintiff made in justifiable reliance of the statement's truth; and damage to the plaintiff because of that reliance. *Doe v. Dilling*, 888 N.E.2d 24, 35-36 (Ill. 2008). Generally, statements made regarding future conduct will not support a viable fraud claim, even if they are made without an intention to perform them. *HPI Health Care Servs., Inc. v. Mt. Vernon Hospital, Inc.*, 545 N.E.2d 672, 682 (Ill. 1989). An exception to this general rule is recognized for false

representations or promises of future conduct that are alleged to be the scheme that is intended to accomplish the fraud. *Steinberg v. Chicago Med. Sch.*, 371 N.E.2d 634, 642 (Ill. 1977).

Under these principles, if Fajerstein had done nothing more than promise to locate a diamond that met Thompson's specifications without intending to do so, Thompson would not have stated a viable fraud claim. However, that allegation is only part of the much larger scheme to defraud described in Thompson's complaint. Rather, the totality of facts, which are pled with particularity, can be construed to describe a scheme comprised of a series of lies that were intended to induce Thompson to buy a diamond that was not like the one he had requested for a price far in excess of what it was actually worth. Not only did Fajerstein promise to deliver a diamond with the characteristics Thompson wanted, he later tried to pass off an inferior stone for an inflated price. The consistently misleading behavior Thompson alleges describes a deliberate attempt to induce Thompson to get into a transaction that was not what he thought it would be and that he would be financially disadvantaged by the lapse of time as well as purchasing a diamond that his wife would not want. Given the repeated and consistent unfulfilled promises made by Defendants as alleged in the complaint, we find that the initial false promise was embedded in a larger pattern of deception that establishes an actionable claim for promissory fraud. Defendants' motion to dismiss this claim is therefore denied.

## D. Conversion

Thompson's fourth count asserts conversion. Under Illinois law, the essence of this tort is the "wrongful deprivation of one who has a right to the immediate possession of the object unlawfully held." *In re Thebus*, 483 N.E.2d 1258, 1260 (Ill. 1985). A cognizable claim asserts unauthorized and wrongful control, dominion, or ownership over the personalty of another; the plaintiff's right to the property; the plaintiff's absolute and unconditional right to the immediate possession of the property; and a demand for possession of the property unlawfully held. *Mid-America Fire and Marine Ins. Co. v. Middleton*, 468 N.E.2d 1335, 1338 (Ill. App. Ct. 1984). As a general rule, an action for conversion cannot be maintained when the action seeks the return of money. *Thebus*, 483 N.E.2d at 1261. However, if the converted money can be specifically described, identified, or segregated, it can sustain a conversion claim. *See Bill Marek's The Competitive Edge, Inc. v. Mickelson Group, Inc.*, 806 N.E.2d 280, 285-86 (Ill. App. Ct. 2004), and cases cited therein. In fact, the situation alleged in Thompson's complaint is very similar to that found to state a cause of action for conversion in *Addante v. Pompilio.*, 25 N.E.2d 123, 123-24 (Ill. App. Ct. 1940). In *Addante*, the plaintiff gave $3,000 in cash to the defendant. *Id.* at 123. The money was to be transmitted and paid to the plaintiff's brother in Italy. *Id.* Rather than transmitting the money as agreed, the defendant kept it for his own use. *Id.* The plaintiff repeatedly demanded that the money be returned to him; each time the defendant promised that he

would repay it, but he never did. *Id.* at 124. The case proceeded to trial, with judgment for the plaintiff on the conversion claim. *Id.*

According to the instant complaint, Thompson wired a specifically identifiable amount, $150,000, into Fajerstein's account. The money was to be paid to another, namely the owner of a diamond that fit the characteristics Thompson had described to Fajerstein. Rather than using the money for what Thompson had intended and what the parties had agreed upon, Fajerstein kept it for himself. Thompson repeatedly requested repayment, and Fajerstein repeatedly promised to do so but never followed through with payment. Under the teaching of *Addante*, this states a cognizable claim for conversion in Illinois. Accordingly, the 12(b)(6) challenge to the conversion claim fails.

**E. Money Had and Received and Unjust Enrichment**

Finally, Defendants move to dismiss Thompson's equitable claims for money had and received and unjust enrichment, arguing that equitable claims cannot be pursued in the same complaint as a claim for breach of an express contract. In his claim for money had and received, Thompson alleges that he is entitled to the return of his $150,000 deposit, which, based on equity and good conscience, Defendants ought not be permitted to retain. The unjust enrichment claim similarly alleges that Defendants are improperly retaining the measurable benefit Thompson conferred on Defendants at their request without receiving any benefit in return.

Claims for equitable relief and breach of contract are alternative pleadings in the challenged complaint, and Rule 8 specifically permits a plaintiff to allege multiple claims in the same complaint even if they conflict. *See*, *e.g.*, *Medcom Holding Co. v. Baxter Travenol Labs., Inc.*, 984 F.2d 223, 229-30 n.4 (7th Cir. 1993). Defendants are correct that a party may not recover for both breach of contract and unjust enrichment when a valid contract governs the dispute between the parties. *Keck Garrett & Associates, Inc. v. Nextel Communications, Inc.*, 517 F.3d 476, 487 (7th Cir. 2008). While this argument will be relevant should liability for the conduct described in the complaint be established, it does not bear a consideration of the sufficiency pleading sufficiency. *See Sapperstein v. Hager*, 188 F.3d 852, 855 (7th Cir. 1999). At this point of the litigation is whether Thompson has stated equitable claims for money had and received and unjust enrichment upon which relief could be granted. He has done so. Accordingly, Defendants' motion to dismiss these alternative claims as inconsistent with other claims is denied.

## CONCLUSION

Based on the foregoing, Defendants' motion to dismiss predicated on Rules 12(b)(3), (b)(6), and (b)(7) is denied. The portion of the motion that is based upon Rule 12(b)(1) is entered and continued to October 2, 2008. Thompson is given leave to file an amended complaint setting forth proper allegations of the citizenship of all parties on

or before that date. Failure to file a complaint with sufficient jurisdictional allegations will result in dismissal of the complaint for lack of subject matter jurisdiction.

/s/ Charles P. Kocoras
Charles P. Kocoras
United States District Judge

Dated:   September 17, 2008