# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| RICHARD THOMPSON, Trustee of ) <br> The Thompson Family Trust, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> RONALD FAJERSTEIN, ) <br> FAJERSTEIN DIAMOND IMPORTERS, ) <br> & CUTTERS, INC., and ANTWERP ) <br> DIAMOND IMPORTERS & ) <br> CUTTERS, INC., ) <br> ) <br> Defendants. ) | No. 08 CV 3240 <br><br> Judge Charles P. Kocoras <br><br> Mag. Judge Michael T. Mason |

## MEMORANDUM OPINION AND ORDER

Michael T. Mason, United States Magistrate Judge:

Before the Court is Plaintiff Richard Thompson's ("Thompson" or "Plaintiff") motion for an award of fees against Defendants' counsel (the "Motion"). [120] Specifically, Plaintiff requests that this Court order Defendants' counsel, The Nathanson Law Firm ("Defendants' counsel"), to provide payment to Thompson's counsel for their improper conduct during discovery. This matter was referred to this Court in accordance with 28 U.S.C. § 636(b)(1)(A) and Local Rule 72.1. For the following reasons, this Court grants Plaintiff's motion for an award of fees against Defendants' counsel [120] in part.

## I.     Background

In his Amended Complaint, Plaintiff alleges that Defendants defrauded him out of

$150,000 in connection with the purchase of an eleven-carat diamond. [26]. The District Court has dismissed this case with leave to reinstate pending further proceedings in the U.S. Bankruptcy Court because Defendants filed for bankruptcy. [109]. Prior to the District Court's dismissal of this case, this Court granted in part and denied in part Plaintiff's motion to compel production [63]. [105]. As part of our ruling, we granted Plaintiff's request for fees and expenses "incurred in connection with this discovery dispute in part" (the "Sanctions") and ordered Plaintiff to submit certain billing records. Specifically, we ordered Plaintiff to submit the billing records of his counsel setting forth the expenses and costs incurred in connection with "(1) Plaintiff's prior motion to compel [42]; (2) attendance at the 2/19/09 and 3/5/09 hearings before the District Court; and (3) Plaintiff's counsel's 3/13/09 email correspondence with Defendants' counsel." [105]. We later vacated that portion of the order [111] after all three Defendants filed notices of bankruptcy petitions and the District Court dismissed the case.

After the dismissal, the District Court granted Plaintiff's motion to reinstate the case for the limited purpose of enforcing this Court's ruling regarding the Sanctions. [115]. The District Court re-referred the case to this Court as follows: "for determination of whether [defense] counsel is liable with respect to the Magistrate Judge's sanctions order, and if so, to allow counsel time to respond and for ruling by the Magistrate Judge." *Id*.

In briefing this Motion, Plaintiff seeks attorneys' fees of $17,580 and costs of $140.30, totaling $17,720.30. Since the briefing on the Motion, Plaintiff filed a motion for leave to supplement his fees and costs submission. [161]. This Court granted

2

Plaintiff's motion and allowed Plaintiff to submit his additional fees and costs for review by this Court. [164].

**II.     Standard**

Federal Rule of Civil Procedure 37 permits the Court to award fees against either the party whose conduct necessitated the motion to compel or the attorneys advising that conduct, or both. Fed.R.Civ.P. 37(a)(5)(A). When a party's attorney is at fault for a discovery violation, "the appropriate remedy is to shift costs to the party's counsel." *Orgler Homes, Inc. v. Chicago Regional Council of Carpenters*, No. 06 C 50097, 2008 WL 5082979, at *3 (N.D. Ill. Nov. 24, 2008) *citing Chappel v. SBC-Ameritech*, No. 05 C 7003, 2007 WL 2076028 (N.D. Ill. July 13, 2007) (decision modified in *Orgler Homes, Inc. v. Chicago Regional Council of Carpenters*, No. 06 C 50097, 2009 WL 899741 (N.D.Ill. Mar. 26, 2009) based on additional facts presented to the court).

Because Rule 37 "does not allow for expenses and fees as a matter of course, district judges have almost absolute discretion when awarding them." *Orgler Homes, Inc*, 2008 WL 5082979, at *3 *citing Ins. Benefit Adm'r v. Martin*, 871 F.2d 1354, 1360 (7th Cir.1984). "[Rule 37] Sanctions exist, in part, to remind attorneys that service to their clients must co-exist with their responsibilities to the court, toward the law, and toward their brethren at the bar." *DeVaney v. Continental Am. Ins. Co.*, 989 F.2d 1154, 1162 (11th Cir. 1993).

A court may assess expenses incurred by discovering parties, against an attorney, resulting from the failure to fully answer to interrogatories or comply with court orders. *See Sun v. Board of Trustees of the University of Ill.*, 473 F.3d 799, 812 (7th

3

Cir. 2007) (stating that in situations of attorneys who cause discovery delay, the district court should impose monetary sanctions instead of entering default judgement). Thus, where it is determined that a failure to comply with discovery is the fault of counsel, he or she may be ordered to personally pay the costs of a motion to compel discovery. *Magnus Electronics, Inc. v. Masco Corp. of Indiana*, 871 F.2d 626, 631 (7th Cir. 1989).

Federal Rule of Civil Procedure 37 does not require the court to make a specific finding that an attorney instigated discovery misconduct before imposing sanctions upon the attorney; rather, the Rule identifies attorneys advising or overseeing discovery as possible subjects of sanctions, along with their clients, and vests the trial court with broad discretion to apportion fault between them. *Devaney*, 989 F.2d 1154.

### III.     Analysis

This Court's order finding Sanctions against Defendants did not make any determination regarding whether Defendants' counsel, distinct from the Defendants themselves, are liable for any fees or expenses Plaintiff incurred in connection with the discovery dispute addressed in that order. [105]. Plaintiff argues that Defendants' counsel should bear Plaintiff's fees because they prepared a series of "evasive and wholly insufficient discovery responses and repeatedly advanced frivolous positions throughout discovery" that led to the motions to compel and hearings before the District Court. Motion, at 1-2. Therefore, Plaintiff seeks his costs and attorneys' fees incurred in connection with his two prior motions to compel.

In order to determine Defendants' counsel's fault regarding the discovery issues in this matter, we must review the steps that got us here. Thompson served his initial discovery on October 15, 2008, which included Plaintiff's First Set of Interrogatories.

4

Defendants objected to many of the interrogatories and refused to answer certain discovery requests, including Interrogatory Numbers 11 and 12, on the basis that the requests were irrelevant. These interrogatories (the "Requests") are as follows:

> 11. State whether you spent or retained the $150,000 Thompson sent you in January 2008 and identify (by financial institution and account number, at a minimum) either the current location of the $150,000, or what you spent it on.
>
> 12. Describe the circumstances by which you identified the eleven carat diamond you described to Thompson, including but not limited to, where you located it, how you determined its value, how you obtained the document attached hereto as Exhibit 1, whether you purchased the diamond, and the price you paid for it.

[64-2, at 3]. Defendants objected to these Requests as irrelevant. *Id.*

Plaintiff filed his first Motion to Compel [42] (the "First Motion to Compel"), on February 16, 2009, in which he sought disclosure of information, including responses to the Requests to Interrogatory Numbers 11 and 12, arguing that Defendants failed or refused to provide relevant discoverable information. Defendants' counsel argued that Plaintiffs' Requests were not legitimate as they were outside the scope of discovery. (2/19/09 Tr. at 4 [64-3]). After hearing oral arguments, the District Court rejected Defendants' counsel's argument that the requested information was irrelevant and stated:

> The heart of the motion [to compel] was argued against with a position that does not bear the slightest degree of credibility or merit ... And for you to say that they are not entitled to know what happened to the money or the trail of the money is just pla[i]n lacking merit. And if that is typical of your position on discovery, then you are not going to get anywhere. And I will lose my patience with resistance which is so – on the face of it, so – lacking in merit as to be unworthy of a lot of paper generated disputing their right to know these things.

(*Id.* at 7). The District Court granted Plaintiff's First Motion to Compel and ordered Defendants to provide the requested information. [45].

5

Following the District Court's direct orders at the February 19, 2009 hearing, Defendants' counsel continued to assert similar positions and kept withholding basic information concerning Fajerstein's use of Thompson's $150,000 and the purchase of the diamond. Defendants' counsel persisted in doing so during the court-ordered discovery conference held on February 26, 2009, a March 5, 2009 status hearing before the District Court, and in email correspondence between the parties' counsel on March 13, 2009 and March 16, 2009. ([64-12]; [64-13]; [64-14]). Plaintiff argues that Defendants' counsel's continued frivolous discovery arguments exacerbated the time and money Plaintiff spent in order to obtain responses to interrogatories.

In response to the District Court's order granting Plaintiff's First Motion to Compel, Defendants' counsel served amended answers to the Requests listing bates ranges for hundreds of pages of documents and failed to provide a narrative response (the "Supplemental Answers"). In an attempt to obtain a more specific response, on February 26, 2009, Plaintiff's attorneys requested more information from Defendants' counsel, but Defendants' counsel refused and defended the Supplemental Answers at a Local Rule 37.2 discovery conference. [64-12]. At the conference, in response to questions regarding the purchase of the diamond, Defendants' counsel stated that the purchase price of the diamond was identified, "the stone was sent for a report; the report was sent to your client, and the deal fell apart." (2/26/09 Tr. at 29 [64-12]). However, when Plaintiff's counsel followed up with a question about whether the diamond had been paid for, Defendants' counsel stated that they "didn't know the sequence" of events. *Id.* at. 29-30. Also during the conference, when questioned "what happened to the money," Defendants' counsel stated that they didn't "think that [their

6

client] used any of the funds to purchase the diamond." *Id.* at 26. However, Defendants' counsel then stated that they were "confused as to what I'm being asked." *Id.* at 26-7. Defendants' counsel also repeatedly kept pointing Plaintiff's counsel to the documents that they already produced, stating "there are no additional documents responsive to that request." *Id.* at 27.

At a status hearing on March 5, 2009 before the District Court, Plaintiff raised the issue of insufficient responses to the Requests again. [51, 64-4]. At that time, the District Court very specifically ordered Defendants to, within seven days, re-answer Interrogatory Numbers 11 and 12 with narrative statements explaining whether the $150,000 was commingled, tracking this money and detailing what happened to the diamond. (3/5/09 Tr. at 7-16 [64-4]). During this status, the Court attempted to elicit an answer from Defendants' counsel concerning whether or not the diamond was ever purchased on the record. *Id.* at 11-15. The District Court cautioned Defendants' counsel when they refused to directly answer the questions. *Id.* at 13. Furthermore, the District Court told Defendants' counsel "I am going to give you one more chance to smooth it out....[Plaintiff] is entitled to know everything your client knows about that diamond." *Id.* at 16.

On March 12, 2009, Defendants' counsel again provided supplemental answers (the "Second Supplemental Answers") to Interrogatory Numbers 11 and 12. [64-13, at 4]. The following day, Plaintiff's counsel sent Defendants' counsel an email requesting additional information, alleging that they still had not followed the District Court's orders. *Id.* at 4. Plaintiff's counsel argued that Defendants' answers to the Requests and

7

responses to the requests to admit were inconsistent. *Id.* Specifically, Plaintiff's counsel inquired how Defendants can both admit and deny the purchase of the diamond in answering the requests to admit without providing any documents or a narrative in response to the Requests to support either position. *Id.* Defendants' counsel responded that they had "disclosed what the judge ordered." *Id.* at 3. In the email exchange that continues back and forth several times through March 16, 2009, Defendants' counsel does not state if the diamond was purchased, but instead gives confusing and, according to Plaintiff's counsel, contradictory statements regarding the oral contracts and purchase surrounding the diamond. [64-13, 64-14].

In April of 2009, Plaintiff filed another motion to compel (the "Second Motion to Compel"). In that motion, Plaintiff asserted that a "core" issue in this case is whether Defendants purchased a diamond for Plaintiff. [63, at 2]. In the Second Motion to Compel, Plaintiff contended that Defendants made several representations, both prior to the filing of this lawsuit and in the initial written discovery responses, that a purchase had been made, but those statements had since been shown to be false based on Defendants' supplemental written discovery responses, their counsel's subsequent statements, Defendant Fajerstein's deposition testimony, and the deposition testimony and affidavit of non-party Michael Rosin. In our ruling on the Second Motion to Compel, we found:

> Plaintiff has demonstrated that Defendants improperly refused to respond, and later repeatedly failed to respond completely, to certain of Plaintiff's discovery requests. Additionally, it is clear that Defendants did not definitively and completely respond to those discovery requests until after Plaintiff filed [the First Motion to Compel] [42], the parties twice appeared before the District Court and that Court twice ordered Defendants to respond [45, 51] (2/19/09 Tr. at 6-8 [54]; 3/5/09 Tr. at 8-15 [64-4]), and Defendants' counsel set forth Defendants'

8

> justification for their responses in 3/13/09 and 3/16/09 emails to Plaintiff's counsel [64-13, 64-14].

[105]. In addition, we granted Plaintiff's request for fees and expenses incurred in connection with the discovery dispute in part. As stated above, after this Court's ruling, Defendants filed their Suggestion of Bankruptcy. [106, 108].

In the pending Motion, Plaintiff argues that he is entitled to the Sanctions this Court ordered on June 12, 2009 from Defendants' counsel because Defendants improperly refused to respond, and later repeatedly failed to respond completely, to certain of Plaintiff's discovery requests, which were "prepared and advanced by his attorneys." Motion, at 2. Plaintiff adds that Defendants' counsel did not supply "basic responses to discovery requests that went to the very heart of the litigation" even after the Court twice ordered Defendants to do so and after months of heated conversations between the parties' counsel. *Id.* at 4. Specifically, Plaintiff argues that Defendants' counsel is responsible for his attorneys' fees because Defendants' counsel "handled (and signed) Fajerstein's discovery responses, asserted frivolous relevance objections, and advanced a strategy designed to avoid directly answering Plaintiff's discovery requests." *Id.* at 3.

In their response brief, Defendants' counsel argues that they are not responsible for Plaintiff's attorneys' fees because they did not violate any of the District Court's orders. Resp., at 2-3 [128]. In addition, Defendants' counsel contends that they did not mislead Plaintiff or the Court in changing the responses regarding whether Defendant Fajerstein purchased the diamond because there was a misunderstanding of the word "purchase" between Defendants' counsel and Plaintiff's counsel. *Id.* at 2, 7.

Defendants' counsel argues that during discovery, Defendant Fajerstein "made it clear that it was his view, and every other diamond merchant's view, that the 'MAZAL' custom treats a hand shake as a purchase in the diamond industry." *Id.*

First, we consider Defendants' counsel's argument that they are not responsible for Plaintiff's attorneys' fees because they did not violate any court orders or advise their client to violate any court orders in this case. Resp. at 3-6. As detailed above and based on this Court's previous findings [105], the District Court's orders were violated. The District Court's repeated and very specific instructions required Defendants to respond to discovery after months of delay. There is some question whether these delays and violations were due to the actions of the Defendants or their counsel, or both. Defendants' counsel do not claim in their briefing that their clients requested that they not answer the Requests, but Defendants' counsel was given many opportunities to do so and did not. In addition, even if Defendants requested that their attorneys not fully respond to discovery, attorneys have an obligation to the Court and other attorneys. *See* the Standards for Professional Conduct within the Seventh Federal Judicial Circuit. Under these Standards, lawyers must "respond to interrogatories reasonably" and "not strain to interpret them in an artificially restrictive manner to avoid disclosure of relevant and non-privileged information," must "base [their] discovery objections on a good faith belief in their merit" and "not object solely for the purpose of withholding or delaying the disclosure of relevant information," and must "not ascribe a position to another counsel that counsel has not taken or otherwise seek to create an unjustified inference based on counsel's statements or conduct." *Id.* at 26, 27, and 29. As set forth in the Preamble to those Standards, counsel must, in "fulfilling [their] duty to

10

represent a client vigorously," "be mindful of [their] obligations to the administration of justice, which is a truth-seeking process designed to resolve human and societal problems in a rational, peaceful, and efficient manner." *Id.*

The District Court commented that "The heart of the motion [to compel] was argued against with a position that does not bear the slightest degree of credibility or merit …" (2/19/09 Tr. at 7 [64-3]). Despite this, Defendants' counsel proceeded to assert similar positions and continued withholding information concerning basic issues of the case. Defendants' counsel's frivolous discovery arguments exacerbated the time and money Plaintiff spent in this case. An award of attorneys' fees is appropriate against attorneys who took unjustifiable positions in discovery. *Magnus Electronics*, 871 F.2d at 631 (affirming award of fees under Rule 37 and Rule 11 for taking arbitrary positions throughout discovery, among other instances of non-compliance).

We find that Defendants' counsel is at least partially responsible for Plaintiff's attorneys' fees as they caused delay in discovery and the necessity of the motions to compel. Not only did Defendants' counsel not fully respond to Plaintiff's Requests, but they also refused to answer the Court's questions concerning whether or not the diamond was ever purchased and what happened to the $150,000 despite the District Court's specific orders. Defendants' counsel's were also evasive when responding to direct questions from the Court.

Next, Defendants' Counsel argues that the responses to discovery may have been confusing, but were not inadequate, because there is a "very special definition of purchase" in the diamond industry, which incorporates a concept called a "mazal."

11

Resp. at 7-8. According to Defendant's counsel, a "mazal" is a traditional phrase "used by the diamond industry when closing a deal. The expression is accompanied by a handshake and is articulated (in Hebrew) by diamond merchants all over the world.... signal[ing] the universally accepted completion of negotiations." Resp. at 9-10. Defendants' counsel states that their client's understanding of purchase was different than the Plaintiff's based on this custom of "mazal." *Id.* Defendants' counsel then argues that Plaintiff's counsel is at fault for the motions to compel and disagreements in discovery because they were unfamiliar with the concept of a "mazal." Resp. at 10. Defendants' counsel contends that the concept of a "mazal" clarifies the discovery confusion between the parties regarding the purchase of the diamond and the "deal" between the parties. *Id.*

Since this Court had not seen the explanation of the "mazal" in its review of the discovery disputes previously presented to the Court, we ordered Plaintiff to file a reply brief in support of his Motion. Specifically, we ordered Plaintiff to "include a timeline of when, if at all, Defendants' counsel gave Plaintiff's counsel the explanation of the 'mazal.'" [135]. In his reply, Plaintiff argues that Defendants' counsel's reliance on the "mazal" concept is disingenuous because "mazal" "was never once mentioned throughout months of written discovery and court hearings on the very issue of whether a diamond was ever 'purchased.'" Reply at 3. The timeline set forth by Plaintiff shows that Defendants' counsel's presented the explanation of a "mazal" for the first time in their response to the pending Motion. *Id.*

We find Defendants' counsel's argument that discovery was prolonged because of confusion regarding concepts of "purchase" and "mazal" to be belated and

12

unpersuasive. Defendants' counsel do not include any reason why they were unable to offer this or any other potentially satisfactory response at any earlier point of discovery. We find that multiple written exchanges between the parties, briefing of motions to compel, and multiple court hearings constitute an excessive number of opportunities for Defendants' counsel to have brought the issue of "mazal" to Plaintiff's counsel or the Court's attention. This Court does not consider here whether the "mazal" argument is a sufficient response to prior interrogatories and related orders. Even allowing that this discussion of the concept of "mazal" is a sufficient response, this belated response comes only after Defendants and their counsel wasted a large amount of court and attorney time.

Even if Defendants' counsel's clients had requested that Defendants' counsel answer discovery responses only in the way they did, Defendants' counsel still signed the discovery responses, wrote emails regarding discovery disputes, filed briefs to the motions to compel and argued baseless discovery positions in open court. Accordingly, monetary sanctions are appropriate against Defendants' counsel. Based on the history of this case and Defendants' counsel's conduct, we find sanctions of half the amount of Plaintiff's attorneys' fees and costs incurred in connection with (1) Plaintiff's motion to compel [42]; (2) attendance at the 2/19/09 and 3/5/09 hearings before the District Court; and (3) Plaintiff's counsel's 3/13/09 email correspondence with Defendants' counsel to be proportionate to the circumstances surrounding Defendants' counsel's failure to comply with the discovery rules and court orders. Plaintiff seeks $17,720.30 in attorneys' fees and costs for these activities. In his supplemental fees and costs submission [161], Plaintiff seeks his attorneys' fees and costs for the briefing of this

Motion. We deny Plaintiff's request for those expenses.

Plaintiff submitted invoices compiled from billing records to this Court for *in camera* review. Those records identify, for each activity related to this case, the timekeeper, number of hours worked, total charge, date, and description of the specific task(s). The invoices include entries for the time period from February 2, 2009 through March 16, 2009 relating to the activities described above. They reflect 39.75 hours of work performed by Jay Williams and Lindsey Evans, counsel of record in this matter for Plaintiff. Mr. Williams' hourly rate is $540 and Ms. Evans' hourly rate is $355.

The reasonable hourly rate for an attorney is the market rate for his services. *See Fogle v. William Chevrolet/Geo, Inc.*, 275 F.3d 613, 615 (7th Cir. 2001). "An attorney's market rate is the rate that lawyers of similar ability and experience in the community normally charge their paying clients for the type of work in question." *Spegon v. Catholic Bishop of Chic.*, 175 F.3d 544, 555 (7th Cir.1999) (citations omitted). There is a presumption that an attorney's actual billing rate is the best measure of the market rate for his services. *See People Who Care v. Rockford Bd. of Educ.*, 90 F.3d 1307, 1310 (7th Cir.1996). An attorney seeking fees has the burden of proving his market rate, but once he does, the opposing party bears the burden of showing why the hourly rate should be lower. *Spegon*, 175 F.3d at 554-55. Defendants' counsel does not contest that the rates cited by Plaintiff are the rates actually charged by its attorneys at Schiff Hardin, LLP. Moreover, Plaintiff has submitted invoices demonstrating that these are the rates his attorneys charged him. The Court will therefore adopt the hourly rates charged by Plaintiff's attorneys.

After reviewing Plaintiff's invoices, as well as the briefing on the pending Motion

14

and motion for leave to supplement fees, we find Plaintiff's counsels' hours expended for the First Motion to Compel, attendance at the 2/19/09 and 3/5/09 hearings, and the email correspondence to be reasonable. Plaintiff's attorneys dedicated approximately 40 hours to these portions of the discovery. The legal services Plaintiff's counsel performed include, among other things, drafting email correspondence to opposing counsel, drafting the First Motion to Compel, reviewing Defendants' document production, reviewing Defendants' supplemental answers to interrogatories, conducting legal research regarding arguments included in the motion to compel, review of the District Court's rulings, and conducting oral arguments before the District Court. Considering the tasks performed, the amount of time Plaintiff dedicated to this matter is not excessive.

## IV. CONCLUSION

For the reasons stated above, this Court grants Plaintiff's motion for an award of fees against Defendants' counsel [120] in part. Defendants' counsel, The Nathanson Law Firm, is to reimburse Plaintiff in the amount of $8,860.15 for fees and costs associated with discovery disputes. Defendants' counsel shall make payment within thirty (30) days of the date of this Order.

**ENTERED:**

_____
**MICHAEL T. MASON**
**United States Magistrate Judge**

**Dated: November 8, 2010**